**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

HILDA SERRANO,

                              Plaintiff,

         - v -                         Civ. No. 1:10-CV-1560
                                             (RFT)[1]

THOMAS L. and CAROLE M. ZIEGLER

                           Defendants.

**APPEARANCES:**                  **OF COUNSEL:**

HILDA SERRANO
*Pro se* Plaintiff
P.O. Box 3047
Crofton, Maryland 21114

CONNOR, CONNOR LAW FIRM        JOHN CONNOR, JR., ESQ.
Attorney for the Defendants
P.O. Box 427, Green Street
Hudson, New York 12534


**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**MEMORANDUM-DECISION and ORDER**

     Presently before this Court is Thomas and Carole Ziegler's (hereinafter "the

Zieglers") Motion to Dismiss/Summary Judgment.  Initially, the Zieglers filed a

Motion to Dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6),

---

[1] Pursuant to 28 U.S.C. § 636(c), on April 27, 2011, the parties consented to this Court conducting any and all proceedings in this case and the Honorable Mae D'Agostino, United States District Judge, reassigned this matter to this Court.  Dkt. No. 10.

Dkt. No. 6. Realizing that the parties had provided submissions far beyond what is required to determine a Rule 12 motion to dismiss and therefore created an extensive factual record,[2] the Court issued an Order converting the Motion to Dismiss to a Motion for Summary Judgment and giving the parties notice of the motion change, the issues to be considered, and a reasonable period of time to submit further facts by either affidavits or exhibits, if they wish. *See* Dkt. No. 15, Order, dated May 23, 2011. Further, the Court waived provisions of the District's Local Rules requiring the filing of a statement of material facts and memorandum of law. *Id*. at p. 3. Even though this Court gave the parties an opportunity to submit further facts, neither party availed themselves of this opportunity. For the following reasons, Zieglers' Motion for Summary Judgment is **granted**.

## I.  STATEMENT OF FACTS

On December 22, 2010, Serrano filed a civil rights Complaint, pursuant to 42

---

[2] The Zieglers' original Motion to Dismiss, Dkt. No. 6, is comprised of the following: (1) John Connor, Jr., Esq.'s Aff., dated Apr. 6, 2011, with Exs. A-D; and (2) Dkt. No. 6-1, Defs.' Mem. of Law.

Serrano's Opposition to the original Motion to Dismiss, Dkt. No. 8, is comprised of the following: (1) Dkt. No. 8-1, Hilda Serrano's Aff., dated Apr. 20, 2011; and (2), Dkt. No. 8-2, Pl.'s Mem. of Law; with Exs. A-H.

Zieglers' Reply to Serrano's Opposition, Dkt. Nos. 11 and 12, is comprised of the following: (1) Dkt. No. 11, Defs.' Reply Mem. of Law; (2) Dkt. No. 12-1, John Connor Jr., Esq.'s Aff., dated May 4, 2011, Thomas Ziegler's Aff., dated May 4, 2011, with Exs. A, Thomas L. Ziegler's Aff., dated Jan. 7, 2009, & B-D.

U.S.C. § 1983, by which this Court presumes she is attempting to raise a violation of her due process rights as protected by the Fourteenth Amendment of the United States Constitution. Dkt. No. 1.[3] The events and occurrences pertinent to this litigation span twenty-eight years. Even with such an extended chronology, there is no material disagreement with the salient facts of this case, only their applicability, relevancy, and construction.[4] To appreciate the multi-faceted issues of this case, it is necessary to draw upon the entire historical narrative.

### A.  Pre-1985

---

[3] Attached to an already comprehensive Complaint are: (1) Serrano's entire Motion Seeking Leave to Appeal, including the record, to the New York Court of Appeals and the Court of Appeals Order, dated November 23, 2010, denying Serrano's leave to appeal; (2) Serrano's appeal to the New York State Supreme Court, Appellate Division, Third Department, including the entire record and the Appellate Division Memoranda and Orders, dated June 17 and August 20, 2010; (3) the Honorable Christopher E. Cahill, Justice of the Supreme Court, Decision and Order, dated February 4, 2009; (4) the Honorable George L. Cobb, Justice of the Supreme Court, Order, dated November 5, 1994, and the entire record presented to that Court; (5) the New York State Supreme Court, Appellate Division Third Department Memorandum and Order, dated October 29, 1992; (6) pleadings and documents related to *Caesar Serrano v. Hilda Serrano*, Index No. 84-3160, including the Honorable Vincent Bradley, Justice of the Supreme Court, Order, dated January 23, 1985; (7) the pleadings and record in *Serrano v. Ziegler, et. al.*, Index No. 92-3729; and (8) the pleadings and record in *Ziegler, et. al., v. Serrano*, Index No. 08-4746. The 538 pages of Attachments ostensibly represent the twenty-eight years of litigation related to this lawsuit. Dkt. No. 1, Compl. Notwithstanding this unabridged record, the parties have nonetheless replicated many of these same documents as attachments to their Affidavits and/or Memoranda of Law. Even with the abundance of record, the Complaint remains somewhat ambiguous as to which constitutional right is alleged to have been violated, thus requiring the Court to presume that that right at issue is due process.

[4] Because the parties are in such an agreement on the facts, the Court will not cite to any specific record, unless deemed absolutely essential, and will rather provide a general summary of the agreed upon facts.

In 1972, Caesar and Hilda Serrano purchased 9 Michelle Drive, Gardiner, New York, the real property in question, from Christian and Rose Ecker. In or about February 1982, Hilda Serrano left her husband and their marital home but inexplicably did not advise him of her destination nor at any later moment her whereabouts. Caesar Serrano commenced a divorce action against Hilda Serrano in 1983. Representing that he was unable to accomplish personal service upon his wife because he did not know of her whereabouts, Caesar Serrano was granted permission to serve the summons and complaint of divorce by publication. In March 1984, the Honorable John G. Connor, Justice of New York State Supreme Court, granted Caesar Serrano a default judgment of divorce. Shortly thereafter, in November 1984, Caesar Serrano commenced an action for partition of the marital residence, 9 Michelle Drive, Gardiner, New York, against Hilda Serrano. Apparently for similar reasons, the Court granted an order allowing Caesar Serrano to serve the summons and complaint for partition by publication. In January 1985, the Honorable Vincent G. Bradley, Justice of the New York State Supreme Court, granted Caesar Serrano a default judgment of partition and awarded him exclusive rights to the martial property. On February 22, 1985, Caesar Serrano transferred title to 9 Michelle Drive to the Zieglers for the sum of $76,000. The Zieglers have occupied this residence ever since.

**B. Post-1985**

*-4-*

In December 1989, Hilda Serrano moved to vacate the judgments of divorce and partition.  On March 6, 1991, Serrano's motion to vacate the default judgment of divorce was denied and, on May 3, 1991, her motion to vacate the default judgment of partition was likewise denied.  Consequently, Serrano appealed both decisions and, on September 14, 1992, the Appellate Division, Third Department, finding that the service by publication was improper, reversed both decisions and vacated both judgments.

On November 10, 1992, Serrano commenced a lawsuit, pursuant to Article 15 of the New York State Real Property Actions and Proceedings Law, against the Zieglers as well as Norstar Mortgage Company, seeking to compel a determination of her claim to 9 Michelle Drive, Gardiner, New York, as well as money damages.  Two years later, on November 10, 1994, the Honorable George L. Cobb, Justice of the New York State Supreme Court, dismissed Serrano's Article 15 Action, finding, *inter alia*, that Serrano had unreasonably neglected to prosecute her action.  Apparently, Serrano did not appeal Judge Cobb's Order and the Zieglers continued to occupy 9 Michelle Drive.

In 2008, in order to quiet title to 9 Michelle Drive and to have it deemed free, clear, and absolute for the purpose of selling 9 Michelle Drive, the Zieglers commenced an action, pursuant to Article 15 of the Real Property Actions and

Proceedings Law, against Serrano. The Zieglers laid claim to this property by virtue of (1) their purchase in 1985, (2) the November 10, 1994 Order and their reliance upon the doctrines of *res judicata* and collateral estoppel, and, (3) the doctrine of adverse possession. In filing an answer, Serrano asserted her legal claim to the property and further sought monetary compensation at the rate of $1,000 per month from February 4, 1985 until judgment and an additional $500,000. Eventually, the Zieglers filed a motion for summary judgment, which included Thomas Ziegler's Affidavit averring how he and his wife openly, notoriously, and exclusively occupied the premises as their martial residence and performed numerous acts consistent with ownership of the real property. *See* Dkt. No. 12, Thomas Ziegler Aff., dated May 4, 2011. Opposing that motion, Serrano argued that the Zieglers obtained the property through a fraudulent conveyance and that she had not relinquished title to the property in any respect. On March 19, 2009, the Honorable Christopher E. Cahill, New York State Supreme Court Justice, awarded summary judgment to the Zieglers based upon the doctrines of *res judicata*, collateral estoppel, and adverse possession. Regarding the doctrine of adverse possession, which is currently promulgated in New York Real Property Actions and Proceedings Law § 511, Judge Cahill found that the Zieglers had demonstrated continuous occupation and possession of the property for a period greater than ten years, paid all of the taxes, maintained the property, and established

all other indicia of ownership.

Judge Cahill's Decision and Order was appealed by Serrano to the Appellate Division, Third Department.  Although the Appellate Division found that Judge Cahill had erred in granting the Zieglers summary judgment on the principle of *res judicata*, it nonetheless found that they were entitled to a judgment quieting title based upon the doctrine of adverse possession.  It was the Appellate Division's view that the record undisputedly established that the Zieglers had continuously and exclusively possessed 9 Michelle Drive for more than ten years.  In addressing Serrano's claim that the Zieglers obtained the property through a fraudulent conveyance, the Appellate Division found that "[Serrano] has failed to provide any evidence that [the Zieglers] had knowledge of the purported fraudulent conveyance at the time it was made, and a deed by one purporting to have authority to convey provides the requisite color of title to support an adverse possession claim[.]"  Dkt. No. 6, Connor Aff., Ex. C, Mem. & Order, dated June 17, 2010.  Serrano's motion for re-argument was denied as well. *Id*. at Ex. D., Dec. & Order, dated Aug. 19, 2010.  And, on November 23, 2010, the New York Court of Appeals denied Serrano's motion for leave to appeal the Appellate Division's memorandum and order.  *Id*. at Ex. E.

### C.  Serrano's Civil Rights Complaint

In her federal Complaint, besides reiterating the entire twenty-eight year history

-7-

of the personal and litigation struggle over the title to 9 Michelle Drive, Serrano posits

that fraud had so infected the Zieglers' claim and title to this property to the extent

that the Zieglers "were knowledgeable of the fraud" and have "displayed 'bad faith

and 'unclean hands'" in falsely claiming adverse possession of the premises. Dkt. No.

1 at ¶¶ 12, & 17-20.   Serrano continues by assailing Judge Cahill's March 2009

Decision and Order as "defective" and, in essence, perpetuating the fraud.  *Id.* at ¶ 22.

There are five Causes of Action which appear to be challenging the validity of the

State Court's decisions relative to this property :

| | |
|---|---|
| First Cause of Action: | "'Defective' rulings by the Ulster County Supreme Court are the genesis of this action, which serve[d] to deny protection to Hilda Serrano's civil rights (martial and property)." *See id.* at ¶¶ 23-26; |
| Second Cause of Action: | "Due to 'defective' rulings, statutory restitution for damages to the aggrieved party is required; Ulster County Supreme Court 1994 'dismissal' was without merit." *Id.* at ¶¶ 27-31; |
| Third Cause of Action: | "Material issue of restitution unresolved by the Ulster County Supreme Court precluding summary judgment; judgment based on erroneous premises." *Id.* at ¶¶ 32-38; |
| Fourth Cause of Action: | "2010 Appellate Division contradicts 1992 Appellate Division Order." *Id.* at ¶¶ 39-48; |
| Fifth Cause of Action: | "There is no limitation on restitution; Appellate Division and Ulster County Supreme Court does not render statutory restitution." *Id.* at ¶¶ 49-51. |

As a result of the State Courts' action or inaction, Serrano seeks a combined $700,000

in monetary damages as well as punitive damages in the amount of $3,000,000.

## II.  Discussion

Originally, the Zieglers moved to dismiss Serrano's Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Under Rule 12(b)(1), the Zieglers assert that the court lacks subject matter jurisdiction, and they raise Rule 12(b)(6) inasmuch as they claim Serrano has failed to state a cause of action.  Because of the extravagant details set forth in the Complaint along with an equally unbridled record attached, as well as the comprehensive record, including Affidavits, filed in conjunction with the Motion, and in order for the Court to read and consider the entire record before it, the Court converted the Motion to Dismiss to a Motion for Summary Judgment, pursuant to FED. R. CIV. P. 56.  Because both Federal Rule of Civil Procedure 56 and Rule 12(b)(1) are operational here, the Court will review both review standards.

### A.  Standards of Review

#### 1.  Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact.

*F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party."  *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact.  *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d

865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

Exclusive of the preponderance of conclusions enunciated by Serrano, this Court finds that there are no genuine issue of material fact.

### 2. Motion to Dismiss Standard

In contemplating a motion to dismiss for lack of subject matter jurisdiction

pursuant to Rule 12(b)(1), the Court must "accept as true all material factual allegations in the complaint[,]" though "argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Atl. Mut. Ins. Co. v. Balfour MacLaine Int'l Ltd.*, 968 F.2d 196 (2d Cir. 1992) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) & *Norton v. Larney*, 266 U.S. 511, 515 (1925)).  A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction may include evidence outside the pleadings, *e.g.*, affidavit(s) or otherwise competent evidence, and cannot be converted to a Rule 56 motion for summary judgment.  *See Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).  Plaintiff brings this action *pro se*, thus her submissions should be held "to less stringent standards than formal pleadings drafted by lawyers . . . ." *Hughe v. Rowe*, 449 U.S. 4, 9 (1980) (*per curium*) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

## B. Rooker-Feldman Doctrine

The record is an exhaustive legal narrative, spanning twenty-eighty years, pertaining to 9 Michelle Drive and Serrano's efforts to unravel the Zieglers' title thereto, all of which played out before three New York State Supreme Court Justices in the County of Ulster and two State Appellate Courts.  All of this legal wrangling over this property between Serrano and the Zieglers reached finality in the New York State Court System when the New York Court of Appeals, on November 23, 2010,

*-12-*

denied Serrano's motion for leave to appeal from the Appellate Division, Third Department June 17, 2010 Memorandum and Order, which affirmed Justice Cahill's award of quiet title to the Zieglers under the doctrine of adverse possession. *See* Dkt. No. 6, Exs. C-E.

Within a month of the New York Court of Appeals Decision, on December 22, 2010, Serrano filed a civil rights action, pursuant to 42 U.S.C. § 1983. Dkt. No. 1, Compl. Because Serrano's Complaint is mostly an historical exposé of a series of events that unfolded within the New York State Court System, it is understandable, even predictable, that her five causes of action would be directed, as result of the eventual consequences that had befallen her, against those courts' rulings and decisions. As such, the ostensible nucleus of Serrano's purported constitutional violations are (1) the "defective rulings" of the Ulster County Supreme Court, (2) "materially unresolved legal issues," (3) conflicting New York State Appellate Division Orders, and (4) the inability of State Courts to render statutory restitution. *Id.* at ¶¶ 23-51; *see supra* Part I.C.

The Zieglers assert that Serrano's five causes of actions impermissibly challenge the validity of those State Court Decisions. Thus, the Zieglers move to dismiss this Complaint, pursuant to FED. R. CIV. P. 12(b)(1), because, under the *Rooker-Feldman* Doctrine, this Court lacks subject matter jurisdiction.

This Doctrine's eponym derives from two United States Supreme Court decisions entitled *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Since 1923, the United States Supreme Court has consistently held that, in most circumstances, district courts do not have subject matter jurisdiction to review final judgments of state courts, only the Supreme Court, itself, is vested with the authority to review state court judgments. *Skinner v. Switzer*, _ U.S. _, 131 S.Ct. 1289, 1291 (2011); *Feldman*, 460 U.S. at 482. Yet the Supreme Court also made manifestly clear that this is a narrowly construed doctrine. *Skinner v. Switzer*, 131 S.Ct. at 1297. The *Rooker-Feldman* Doctrine is "confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgment rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (finding that parallel or concurrently pending state and federal action are not precluded by the Doctrine).

There are four requirements a district court must consider before invoking the *Rooker-Feldman* Doctrine:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "'complain[ ] of injuries caused by [a] state-court judgment [.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"- i.e., *Rooker-Feldman* has no application to federal-court suits proceeding

in parallel with ongoing state-court litigation. The first and fourth of
these requirements may be loosely termed procedural; the second and
third may be termed substantive.

*Morrison v. City of New York*, 591 F.3d 109, 112 (2d Cir. 2010) (quotation marks and
alteration in the original) (quoting *Exxon Mobil Corp. v. Saud Basic Indus. Corp.*, 544
U.S. at 284); *see also Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 & 89
(2d Cir. 2005) & *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (noting that the
four requirements must be met for the *Rooker-Feldman Doctrine* to apply).

In her Complaint, Serrano assails each State Court decision rendered relative

to 9 Michelle Drive.   The predominate, and maybe the sole, discussion in her

Complaint, Affidavit, and Memorandum of Law takes considerable issue with each

of the relevant rulings.   The Attachments to Serrano's Complaint and the Exhibits

presented in support of her Opposition to the pending Motion are the court records and

rulings of the various related State Supreme Court Decisions.  Dkt. No. 8-2, Exs. A-G.

Notwithstanding Serrano's attempts to frame this federal litigation as a "new,

independent claim," the record and her arguments expound upon her attempt to

vindicate her rights against wrongly decided State Court rulings.   The following

commentary by Serrano evinces that she is seeking either an appellate review or a

collateral attack of final state court decisions:

● "Honorable Christopher E. Cahill['s] summary judgment approved
[Zieglers'] adverse claim in error . . . and neglected to resolve the fraud
in their holding . . . . The State Court decisions do not review the effect
of the Defendants' conduct."  Dkt. No. 8-2, Pl.'s Mem of Law at p. 2.

● "The Court's prior misrulings that caused the loss of property." *Id*. at
p. 3.

-15-

- "Whether the review of [1994 Ulster County Decision] is accomplished by the District Court or the Supreme Court is an issue for review herein." *Id*. at p. 5.

- "Plaintiff exhausted remedy by the State judiciary . . . . Plaintiff asserts five causes of action, which there is no valid evidence with the State Court decisions, have been definitively 'litigated and decided' based on the factual and legals disputes set forth." *Id*. at p. 6.

- "By a preponderance of the State's decisions and Plaintiff's claims, adverse possession was approved in error. . . . the decisions neglected Plaintiff's superior, clean title status, neglected to statutory restitution and further prejudiced Plaintiffs' [sic] rights." *Id*. at p. 12.

- "The issues of the present action pertain to misrulings by the State court, errors in application of law and statutory provisions that the Court neglected to provide, which further prejudiced the Plaintiff's rights." *Id*. at p. 14.

- Plaintiff . . . seeks to rectify State Court error and secure relief from the harm caused . . . [and] to 'reverse and modify' State Court decisional errors." *Id.* at p. 16.

When applying the four requirements of the *Rooker-Feldman* Doctrine to the facts and circumstances of this case, the Court can only conclude that it lacks subject matter jurisdiction over this case. First, setting aside for the moment all of the court decisions prior to 2009, Serrano lost her claim of a property interest in 9 Michelle Drive when Justice Cahill determined that the Zieglers had title under the doctrine of adverse possession. That aspect of Cahill's determination was upheld by the Appellate Division, Third Department, and came to a final repose when the New York State Court of Appeals denied her leave to appeal. Second, Serrano complains, *via* her

five causes of action, that she sustained the loss of monthly restitution in the amount of $1,000 a month, title to 9 Michelle Drive, and other monetary damages, all of which are attributable to the erroneous state court judgments.  More specifically, Serrano alleges that she is "being battered and suffering from the [State] Court's hollow explanations and trumped-up reasons ab initio that only substantiate the [State] Court's lack of fair ruling and equitable consideration to render [to her] what is the Court's responsibility under the law to provide: restitution for the  [State] Court's defective rulings that prejudiced [her] rights and caused [her] to be destitute and homeless during [her] twilight years."  Compl. at ¶ 50.  Third, the specific tone and texture of Serrano's Complaint is an invitation to this Court to review the alleged misrulings of the State Courts, correct them, and provide the relief that those State Decisions denied her.  Serrano's importune that she "will suffer the effects of harm until an equitable measure of relief is provided," *id.* at ¶ 51, evinces a solicitation to this Court to review, reject, or modify all of those offending State Court Judgments.  Fourth, and finally, considering her admissions, as noted above, Serrano fully litigated and fully exhausted all of her New York State litigation avenues before turning to this Federal Court for legal relief.

Serrano's interjection of the element of fraud, which was considered at both the State Trial and Appellate Court levels, into this federal litigation does not alter our

conclusion. Recently, the Second Circuit, when addressing the application of the *Rooker-Feldman* Doctrine, was confronted with an analogous set of facts in *Castiglione v. Papa*, _ Fed. Appx. _, 2011 WL 1938666 (2d Cir. May 23, 2011) (unpublished decision).   In *Castiglione*, the plaintiff therein claimed that she was raising an independent constitutional claim, albeit supported by an allegation of fraud perpetrated by the defendants.   However, the Second Circuit found the defendants and plaintiff's allegation of their fraudulent efforts to probate a will and codicil were the very same parties and issues raised before the state surrogate court proceedings.   After confirming that the district court properly applied the four *Rooker-Feldman* Doctrine requirements, the Circuit affirmed the district court's dismissal for lack of subject matter jurisdiction.   Here, Serrano raises the matter of her husband's fraud and argues that such fraud was transmittable to the Zieglers thereby sullying their title.   Yet, the Appellate Division dispatched all notions of fraud by finding that Serrano "ha[d] failed to provide any evidence that [the Zieglers] had knowledge of the purported fraudulent conveyance at the time [title] was made. . . .   In the absence of any competent proof raising a triable issue of fact as to any of the elements of [the Zieglers'] adverse possession claim, summary judgment was properly awarded." Dkt. No. 6, Ex. C at p. 4.   Hence the issues before this Court are exactly the same as those addressed by the New York State Courts.   Accordingly, this Court finds that there is

no independent claim and thus does not have subject matter jurisdiction over this litigation.  Therefore, the Court dismisses the Complaint pursuant to FED. R. CIV. P. 12(b)(1).

### C.  Preclusive Effect

The Zieglers also move to dismiss Serrano's Complaint, pursuant to FED. R. CIV. P. 12(b)(6), based upon the doctrines of preclusive effect.  However, as stated above, the Court has converted the Motion to Dismiss to a Motion for Summary, pursuant to FED. R. CIV. P. 56.

Often the *Rooker-Feldman* Doctrine is raised in conjunction with issues of preclusive effect.  *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77.  However, "[the *Rooker-Feldman* Doctrine] does not supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state court actions."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. at 284.  Although this Court has already decided that it lacks subject matter jurisdiction, it will, nonetheless substantively discuss whether the doctrines of *res judicata* and collateral estoppel have any consequence to this action.

The concepts of *res judicata* and collateral estoppel, based in consideration of judicial time and economy, are by no means novel concepts.  Generally *res judicata*, or claim preclusion, is an affirmative defense to be pleaded in the defendant's answer.

*-19-*

*See* FED. R. CIV. P. 8(c). "However, when all relevant facts are shown by the court's own records, of which the court takes notice, the defense may be upheld on a Rule 12(b)(6) motion without requiring an answer." *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992); *see also Thompson v. Cnty. of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994). Thus, in this case, the grounds for preclusion must be apparent on the face of the Complaint.  When a judgment on the merits is entered in a case, the doctrine of *res judicata* commands preclusive effect not only on matters of law already decided, but also those which could have been raised.  *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (cited in *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994)).  This preclusive effect applies only to future cases involving the same parties and their privies.  In this Circuit, *res judicata* applies "to preclude later litigation if the earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action."  *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985) (citations omitted).  On the other hand, under collateral estoppel, or issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."  *Allen v. McCurry*, 449 U.S. at 94 (quoted in *Burgos v. Hopkins*, 14 F.3d at 789).  Notably, with collateral estoppel, the party who is to be

estopped from relitigating an issue must have been afforded due process in the prior litigation, or in other words, notice and an opportunity to be heard on the matter. *Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 329 (1971). More succinctly, *res judicata* bars claims regardless of what issues were actually presented, whereas collateral estoppel bars only those issues which have been litigated and resolved.

The key to both doctrines is a party's involvement in the prior action and without a doubt Serrano has been an active party in the above-described legal actions. With the exception of Caesar Serrano's involvement in 1982-84, Hilda Serrano and the Zieglers have been in litigation mode since 1994, culminating into a 2009 judgment quieting title for the Zieglers.  On June 17, 2010, the Appellate Division, reviewing the entire record, affirmed Justice Cahill's Decision and Order, finding, *de novo*, that the Zieglers were entitled to a judgment quieting title to the premises based upon adverse possession and, moreover, Serrano did not provide evidence that the Zieglers had knowledge of a purported fraudulent conveyance.   Dkt. No. 6, Ex. C at p. 4.  When the New York Court of Appeals declined to review Serrano's motion for leave to appeal, the Zieglers' title in 9 Michelle Drive was quieted forever.  *Id*. at Ex. E.

Even though collateral estoppel would have some effect, *res judicata* is the

most applicable principle here.  Although Serrano has cast this action as a § 1983 action, in virtually every respect, this litigation involves the same cause(s) of action and the same parties, concluding with a final judgment on the merits by state courts of competent jurisdictions.  The relief sought here is not distinct from the relief sought in state court.  Attempting to shape monetary damages as "restitution" is unavailing.  And, the only threads that barely bind Serrano's five causes of action together are the purportedly erroneous court rulings themselves.  Actually, this litigation is a transparent effort to simply re-litigate that which was decided against Serrano.  Thus, the preclusive effect of *res judicata* applies to this subsequent case. And, should there be any reservation about the issue of fraud not being fully resolved, the Appellate Division resoundingly answered that legal issue.  Thus, Serrano is collaterally estopped from raising it again with this Court.[5]  For these preclusive reasons, the Zieglers' Motion is granted and Serrano's Complaint is dismissed.

## D.  Failure to State a § 1983 Action

Calling a lawsuit a "civil rights action" pursuant to 42 U.S.C. § 1983 does not necessarily suffice that such a cause of action has been clearly stated or even exists.

---

[5]  The claim of fraud is the only conceivable nexus co-joining the State Courts and the Zieglers to the denial of proper title to Serrano.  Yet, there are no facts, exclusive of those presented to the Appellate Division, that support the proposition that the Zieglers in fact committed or knowingly participated in a fraud. Specific facts are required when a party alleges fraud.  FED. R. CIV. P. 9(b).

Notwithstanding the Complaint's prolix, there are several pleading defects, primary of which is Serrano's suggestion, in conclusory fashion, that the State Courts and the Zieglers' violated her constitutional rights. Since the State Courts, who have rendered the ultimate decision against Serrano's property rights and interest, are not named as a party, the Court will only address the Complaint's futility against the Zieglers.[6]

It is well-settled that parties may not be held liable under § 1983 unless it can be established that they have acted under the color of state law. *See*, *e.g., Rounseville v. Zahl*, 13 F.3d 625 (2d Cir. 1994) (noting state action requirement under § 1983); *Wise v. Battistoni*, 1992 WL 380914, at *1 (S.D.N.Y. Dec. 10, 1992) (same) (citations omitted). State action is an essential element of any § 1983 claim. *See Gentile v. Republic Tobacco Co.*, 1995 WL 743719, at *2 (N.D.N.Y. Dec. 6, 1995) (citing *Velaire v. City of Schenectady*, 862 F. Supp. 774, 776 (N.D.N.Y. 1994) (citation omitted). Traditionally, the definition of acting under color of state law requires that the section 1983 defendant "exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."

---

[6] Section 1983 permits a plaintiff to commence suit in federal court against a "person" who has, under color of law, violated Plaintiff's federal rights. "A state, or a state agency, is not a 'person' within the meaning of § 1983." *Perry v. State*, 2003 WL 22992293, at *1 (D. Conn. Nov. 21, 2003) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989) & *Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir. 1998)). Since New York State Supreme Court and the Appellate Division Third Department are not a "person" as defined by Section 1983, they are not amenable to suit under Section 1983 and would be dismissed on this basis alone.

*Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir. 1996) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal quotation marks and citation omitted)).

There are no factual allegations, nor could there be, that the Zieglers were acting under the color of state law or even had the authority of law. At best, the Zieglers were on equal footing with Serrano in their legal proceedings and subject to the same operation of law; the Zieglers were neither promoters, promulgators, nor governmental players in either rendering the decisions and orders or enforcing them. Moreover, this Court stretched, as it must, the boundaries of liberality in favor of the non-movant Serrano in order to determine if a plausible, or even conceivable, federal right was violated, and none was found. In the absence of a state actor in this litigation, Serrano's Complaint shall be dismissed.

### III. CONCLUSION

Accordingly, for all of the reasons stated above, it is hereby

ORDERED, that the Zieglers' Motion to Dismiss/Summary Judgment, Dkt. No. 6, is **granted** and Serrano's Complaint, Dkt. No. 1, is **dismissed**.

**IT IS SO ORDERED**.

Albany, New York
June 14, 2011

*-24-*

RANDOLPH E. TREECE
United States Magistrate Judge